FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 0 1 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:09-cv-00115-RWS ) ) |
| CRE CAPITAL CORPORATION, a Georgia corporation, and JAMES G. OSSIE, an individual, | ) ) ) ) |
| Defendants. | ) ) ) |

(~~Proposed~~) CONSENT ORDER OF PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF AGAINST
<u>DEFENDANTS CRE CAPITAL CORPORATION AND JAMES G. OSSIE</u>

## I.   INTRODUCTION

On January 15, 2009, Plaintiff United States Commodity Futures Trading Commission ("Commission" or "CFTC") filed its Complaint [DE # 1] against Defendants CRE Capital Corporation ("CRE") and James G. Ossie ("Ossie") (collectively "Defendants") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L.

1

No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008).  The Complaint alleges that, from at least June 2007 to the present, CRE, through its principal and controlling person, Ossie, solicited approximately $25 million from more than 120 members of the general public for the purported purpose of trading off-exchange foreign currency contracts.  The Complaint further alleges that Defendants offered "30 Day Currency Trading Contracts," which, prior to September 1, 2008, guaranteed 10 percent return in 30 days, and claimed that this guaranteed return was produced by their successful currency trading when, in fact, Defendants' futures trading resulted in substantial losses and any purported returns or other "profits" paid to customers came from existing customers' original principal and/or from money invested by subsequent customers.

On the same day the Commission filed its action, the Securities and Exchange Commission ("SEC") filed its own action in this Court against the Defendants based on the same conduct alleged in the Commission's complaint.[1]  The U.S. Attorney for the Northern District of Georgia also brought criminal

---

[1] *SEC v. CRE Capital Corporation and James G. Ossie*, 1:09-cv-0114 RWS (N.D. Ga.) (hereinafter, the "SEC Action").  In the SEC Action, by Order entered January 15, 2009, Michael Fuqua was appointed receiver ("SEC Receiver").  SEC Action, Order Granting Permanent Injunction, Freezing Assets, Appointing a Receiver and Ordering Other Ancillary Relief, entered January 15, 2009 [SEC Action D.E. 5].

charges against Ossie based on the same conduct alleged in the Commission's and the SEC's complaints.[2]

## II.    CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against CRE and Ossie without a trial on the merits or any further judicial proceedings, CRE and Ossie:

1. Consent to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief ("Consent Order");

2. Affirm that they have agreed to this Consent Order voluntarily, and that no threat, or promise, other than as specifically contained herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledge that they have waived the service of the Summons and Complaint;

4. Admit the jurisdiction of this Court over themselves and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2);

---

[2] *United States v. James G. Ossie*, 1:09-cr-119 WSD (N.D. Ga.) (hereinafter, the "Ossie Criminal Action").

5. Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

6. Waive:

   a) any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148.1 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 148.1 *et seq.* (2009), relating to, or arising from, this action;

   b) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No.104-121, §§ 201- 253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

   c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

   d) all rights of appeal from this action;

7. Consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case, even if Defendants now or in the future reside outside the jurisdiction;

8. Agree that neither Defendants nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, or creating, or tending to create, the impression that the Complaint or this Consent Order is

without a factual basis; provided, however, that nothing in this provision shall affect Defendants': (i) testimonial obligations, or (ii) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall undertake all steps necessary to ensure that their agents and employees under their authority or control understand and comply with this agreement;

9. By consenting to the entry of this Consent Order, Defendants neither admit nor deny the allegations of the Complaint, except as to jurisdiction and venue, which Defendants admit. However, Defendants agree and intend that the allegations of the Complaint shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (i) any current or subsequent bankruptcy proceeding filed by, or on behalf of, or against either of the Defendants; (ii) any proceeding to enforce this Consent Order; and (iii) any proceeding pursuant to Sections 8a(1)-(2) of the Act, 7 U.S.C. §§ 12a(1)-(2) (2006), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2009); and

10. Agree to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 33 of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against either of the Defendants.

11.     No provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

## III. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

12.     Defendants, and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with any Defendant, including any successor thereof, are permanently restrained, enjoined, and prohibited from engaging, directly or indirectly:

(i)     in conduct in violation of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C); and

(ii)    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

(iii)   entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i))

("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

(iv) having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

(v) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

(vi) soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

(vii) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

(viii) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the

Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

13. The injunctive provisions of this Consent Order shall be binding upon Defendants, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of Defendants and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendants.

## IV. RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER ANCILLARY RELIEF

### A. Restitution - Ossie

14. Ossie's violations of the Act, as amended by the CRA, merit the award of significant restitution. However, the Court recognizes that Ossie is subject to a criminal restitution obligation of $18,761,175.00 entered in the Ossie Criminal Action (hereinafter, the "Criminal Restitution Obligation") for the misconduct at issue in this civil action. Because the criminal court has already awarded restitution to defrauded customers, the Court is not ordering additional restitution against Ossie in this Consent Order.

### B. Restitution - CRE

15. CRE shall pay restitution in the amount of $5,705,250 plus post-judgment interest (the "Restitution Obligation"). Post-judgment interest shall

accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Consent Order pursuant to 28 U.S.C. § 1961(a).

16. CRE's Restitution Obligation shall be reduced, dollar-for-dollar, by: 1) the SEC Receiver's distribution of CRE's assets from the Receiver Estate to CRE's customers pursuant to the claims process established or to be established in the SEC Action; 2) Ossie's full or partial satisfaction of his Criminal Restitution Obligation; and/or 3) Ossie's full or partial satisfaction of the SEC Disgorgement Obligation.

17. The SEC Receivership is in possession of funds for distribution to CRE's customers pursuant to the claims process established or to be established in the SEC Action. Upon termination of the Receivership in the SEC Action, the SEC Receiver shall provide the Commission with notice of the amount by which the Restitution Obligation is to be reduced pursuant paragraph 17, above. Such notice shall be sent to the Chief Financial Officer, Office of Financial Management, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

18. To effect payment by CRE and distribution of the Restitution Obligation, the Court appoints the National Futures Association ("NFA") as

Monitor ("Monitor"). The Monitor shall collect restitution payments from CRE and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, it shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

19.  CRE shall make restitution payments under this Consent Order to the NFA by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the "CRE Capital Settlement Fund" and sent to Office of Administration, National Futures Association, 300 S. Riverside Plaza, Suite 1800, Chicago, IL 60606-6615, under a cover letter that identifies CRE and the name and docket number of the proceeding. CRE shall simultaneously transmit copies of the cover letter and the form of payment to i) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and ii) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

20.  The Monitor shall oversee CRE's Restitution Obligation and shall have the discretion to determine the manner for distribution of such funds in an equitable fashion to defrauded CRE customers as appropriate.

21. The SEC Receiver shall provide the Monitor with a list of CRE customers who have been approved by the SEC Receiver in accordance with the process set forth in the March 26, 2009 Order entered by the Court in the SEC Action ("eligible CRE customers") [SEC Action D.E. 25].

22. Should the Monitor be unable to locate certain eligible CRE customers after making reasonable efforts to do so, the Monitor shall distribute the funds owed to those customers equitably to the other eligible CRE customers. In the event that the Monitor determines that the amount of funds available for distribution to eligible CRE customers is of a *de minimus* nature such that the Monitor determines that the administrative costs of making a restitution distribution is impractical, the Monitor may, in its discretion, transfer such funds to the Commission to be applied to CRE's civil monetary penalty obligation under Section IV.C of this Consent Order.

23. Subsequent to the entry of this Consent Order, CRE shall provide the Commission and the Monitor with immediate notice of any filing or compromise and settlement of any private or governmental actions relating to the subject matter of this Consent Order in the manner required by paragraph 34 of this Consent Order.

24. To the extent that any funds accrue to the U.S. Treasury as a result of CRE's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

### C. Civil Monetary Penalty

25. Ossie shall pay to the Commission a civil monetary penalty ("CMP") in the amount of $4,842,426 plus post-judgment interest, and CRE shall pay to the Commission a CMP in the amount of $15,251,950 plus post-judgment interest.

26. Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Consent Order pursuant to 28 U.S.C. § 1961(a).

27. Defendants shall pay their respective CMPs by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
Attn: Marie Bateman – AMZ-300
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-6569

If payment is to be made by electronic funds transfer, Defendants shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of their respective CMPs with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to: a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1151 21st Street, NW, Washington, DC 20581; and b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

### D.    Priority of Payments and Partial Payments

28.    Ossie shall pay his CMP obligation after full satisfaction of his Criminal Restitution Obligation.

29.    CRE shall pay its Restitution Obligation and CMP obligation after termination of the Receivership in the SEC Action.

30.    All payments by CRE pursuant to this Consent Order shall first be applied to satisfy its Restitution Obligation. After satisfaction of its Restitution Obligation in full, payments by CRE pursuant to this Consent Order shall be applied to satisfy CRE's CMP.

31. Any acceptance by the Commission or Monitor of partial payment from CRE of its Restitution Obligation or from either Defendant of their respective CMP obligations shall not be deemed a waiver of Defendants' obligations to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment from Defendants of any remaining balance.

### E.  Other Provisions

32. Defendants shall cooperate fully with the Commission and any other federal or state government agency seeking to enforce the civil monetary penalty provisions of this Consent Order by providing any requested information relating to their financial status including, but not limited to, income and earnings, assets, financial statements, asset transfers, tax returns, and assets held by them in foreign countries.

33. The equitable relief provisions of this Consent Order shall be binding upon Defendants and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Defendants, and any person acting in active concert or participation with Defendants who receives actual notice of this Consent Order by personal service or otherwise.

### V.  MISCELLANEOUS PROVISIONS

34. <u>Notice</u>: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

>Division of Enforcement
>Commodity Futures Trading Commission
>1155 21st Street NW
>Washington, DC 20581

Notice to Ossie:

>William G. Leonard
>Taylor English Duma LLP
>1600 Parkwood Circle, Suite 400
>Atlanta, Georgia 30339

Notice to CRE:

>Jennifer D. Odom
>Counsel to Receiver Michael Fuqua
>Bryan Cave LLP
>One Atlantic Center, 14th Floor
>1201 W. Peachtree Street, N.W.
>Atlanta, GA 30309

All such notices to the Commission shall reference the name and docket number of this action.

35. <u>Change of Address/Phone</u>: In the event that there is an address and/or telephone number change for any Defendant, that Defendant shall provide written notice of the new address(es) and/or numbers to the Commission within twenty (20) calendar days thereof.

15

36.     Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

37.     Invalidation: If any provision of this Consent Order, or if the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

38.     Waiver: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

39.     Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have

been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

40. <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this case to assure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

41. <u>Authority</u>: Michael Fuqua, the SEC Receiver, is hereby authorized, empowered and directed to sign and submit this Consent Order on behalf of CRE and to take all necessary and appropriate acts to carry out and implement this Consent Order in accordance with its terms without further order of the Court.

**IT IS SO ORDERED**, this _1st_ day of _December_, 2010, at Atlanta, Georgia at _10:00 A_.M.

_____
HON. RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

17

CONSENTED TO AND
APPROVED BY FOR ENTRY:

_____
James G. Ossie

Dated: _____, 2010

_____
William G. Leonard
Taylor English Duma LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339

Attorney for James G. Ossie

Dated: _____, 2010

_____
CRE Capital Corporation, by its
Receiver, Michael Fuqua

Dated: **8/30**, 2010

_____
Daniel C. Jordan, *pro hac vice*
Attorney for U.S. Commodity
Futures Trading Commission

Dated: **11/29**, 2010

_____
Jennifer D. Odom
Bryan Cave
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309

Attorney for Michael Fuqua,
Receiver for CRE Capital
Corporation

18

CONSENTED TO AND
APPROVED BY FOR ENTRY:

_____
James G. Ossie

Dated: __4/8__, 2010

_____
William G. Leonard
Taylor English Duma LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339

Attorney for James G. Ossie

Dated: __4/11__, 2010

_____
CRE Capital Corporation, by its
Receiver, Michael Fuqua

Dated: _____, 2010

_____
Daniel C. Jordan, *pro hac vice*
Attorney for U.S. Commodity
Futures Trading Commission

Dated: _____, 2010

_____
Jennifer D. Odom
Bryan Cave
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309

Attorney for Michael Fuqua,
Receiver for CRE Capital
Corporation

Dated: _____, 2010